May it please the Court, Paul Lindenmuth here on behalf of Sergio Morales, Rosa Morales, and the estate of Rosa Chacon, as well as those individuals with regard to claims which were assigned to them by Shelbie Frounfelter, who was undisputably a State Farm insured. This matter comes before you on two orders from the District Court granting summary judgment. One order granted summary judgment on plaintiff's coverage claim or would have been Ms. Frounfelter's coverage claim vis-a-vis to policies of insurance held by her father, I. Michael Webb, and also the Court's granting of summary judgment on what is essentially Ms. Frounfelter's bad faith in settlement negotiations. More particularly, we can drill that down to being a bad faith in settlement negotiations relating to a failure to provide information which may have served to resolve the underlying claim. This case, I know the Court is probably well aware of the underlying facts, but I think the underlying facts are important to set the scenario for the bad faith claim. This is a matter where on October 12, 2012, there was an egregious motor vehicle accident involving Ms. Frounfelter and involving the Morales' vehicle. Typical liability dispute, one car was heading southbound, indicated they had a green ball light in front of them. The car heading northbound indicated they had a green turn arrow, and obviously you can't have both. The case very quickly, the parties, the Morales' very quickly began engaging in settlement negotiations with Ms. Frounfelter's insurance company, State Farm. The assigned adjuster's name was Karen Fortin. Quite clearly, even though there was clearly a potential for a liability dispute in this case, it became very, very apparent, at least I would suggest to State Farm, that discretion was the better part of valor in this case and that settlement negotiations should be conducted in earnest, given the fact that one of the passengers in the other vehicle involved was arguably injured as a result of Ms. Frounfelter's negligence, died in the collision. State Farm paid the property damage, which if there was a continuing liability dispute, they would not have done. They offered the clearly available State Farm policy limits of $5,100 that was applied to the car that Ms. Frounfelter was driving. Is there any dispute that Frounfelter mainly lived with her mother at the time of the accident? No. No, we're not disputing that. We don't think it's relevant. So that's not a question dispute, then she's not an insured under her father's policy, right? I don't agree. And I don't, one, I don't agree the language used in the father's policy in any way passes the muster of public policy under Washington law. But if I could, I would support Setting aside the public policy question for a moment, the policy defines insurers as people who reside primarily with the name insured. Given that she mainly lived with her mother on the plain reading of the insurance policy, the father's insurance policy, I don't see how she could be someone who resides primarily with the father who's the insured under that particular policy. I didn't hit this hard in my briefing, nor with the district court. I think if you put it all into context and if you look at the entirety of the policy, you might argue there's an ambiguity there. I don't think I'm going to go there. The word primarily? I mean, primarily seems to have a pretty good meaning. It's one, it's Maine. It's not, you don't have two primary residences. So you can say that there's ambiguity, but I don't, I don't hear it. I suppose I could argue, Your Honor, that if it was 50% of her time was here, 50% of the time was there. But we know it wasn't that way. I agree. I agree. If we go to the plain reading of the policy. Let's say that's not a good argument. Let's say you lose on that argument. I think I lost on that argument. But that's okay. And I wanted to start there because your bad faith claim is really related to the conduct of failing to essentially produce the information from the father's insurance policy. Right. And I understand and appreciate the argument that when you're trying to negotiate a settlement, as a matter of theory and in fact, you want to see what's available before you settle out the case, right? Is that the crux of the bad faith claim is that you wanted to have all information available, including information on the father's policy, but you didn't get it. And so it presented a barrier to settlement and then you had to take them out at the trial. And you have to remember that not only did I get the gist of the theory, correct? I think that is correct. And it's a little more than that. It is literally customary practice if you're dealing with a claim where there's a likelihood that the available insurance is insufficient to fully compensate. And I won't say it's the standard of care, but it's pretty darn close to it in a personal injury practice, that you're going to ask for declarations regarding whatever other assets might be available. Here it was clear that the potential exposure, that exposure reached out to the parents, both the siler, the mother's household. You sued them. We ultimately did. But this is well before that ever occurred. But it's not hard to see that potentially you could reach out. Right. So the first thing you're going to ask for is a declaration where they're going to lay out their assets. What's your mortgage? What have you got? And you're evaluating whether or not, after a bankruptcy filing, there would still be any money left to pay the claim. So as a matter of diligence, you're going to have to reach out and make sure that you explore potential coverage given the policy limits on the mother's insurance policy. Correct. So that's what you were trying to do. Yes. But the problem that I have is that it appears that under state law, in order to succeed on a bad faith claim, you do need to show that the insurer's conduct caused harm. In other words, you need to show that the bad faith, alleged bad faith conduct resulted in some sort of prejudice. And given that, if you lose on the insured and she's not covered under her father's policy, how could there be any harm that would be a necessary element to succeed on the bad faith claim? Because it's a different, it's really a different analysis. The coverage issue and the bad faith analysis are mutually exclusive. I can lose on coverage and still win on bad faith. And the reason why is, is because on the coverage on the father's policies. We do know, Shelby, and this is where I think there's a fundamental factual error by the district court. He ignored the fact that Ms. Fraunfelter was a state farm insured. Under an entirely separate policy. Under, it's a state farm policy. It doesn't matter. Analytically, it makes no difference. And the reason why it makes no difference is that, let me please. I'll hear your reason first and then I'll challenge it. The reason why it makes no difference is because at that point in time, state farm, because she's an insured, owes her two things. A duty to take equal consideration of her interest to that of the insurance company. And two, when it becomes a request for information settlement issue, they have a duty to analyze whether or not giving that information out is in her best interest. And it would have been in her best interest to give out information regarding her father's insurance policies. In the Charbonneau case, which we represented the third party. But would it have been in the interest of her father as the insured? Because the only two, you're arguing is a state farm and Ms. Fraunfelter were the only two people involved. And that's not the case. Because you're now talking about a policy that belongs to still another state farm customer. Well, okay. If that's the case, one, a single adjuster should not be representing all the time because there's a conflict. Two, that would require an analysis. In other words, they have to do, once that request is being made, under Washington law, the Charbonneau and Smith opinions, and I'm very familiar with Charbonneau because we represented the underlying third party claimants in that case. Under that analysis, they have to do a best interest analysis. In other words, is it in her best interest to do it? At that point, they may have discovered there was a conflict. But what we have here is an absence of any evidence that they ever considered whether or not it would be in Shelby's best interest to give that information out. And you have to remember... How would it have been in her best interest to give that information out? Because we would have been able to do an independent analysis and make a determination as to whether or not the analysis that state farm was doing contemporaneously was an accurate analysis or not. And what would that have led to? We don't know. Well, we do sort of know because you got that information and the case still went to trial. We don't go there under Washington law, and I suggest this is why we don't go there, is because once there's been bad faith under that factual pattern, they fail to give you information. The other... You're presuming bad faith. At the time the decision is made, they are allowed to trace this out and say to themselves, okay, is this going to be in Shelby's best interest? Well, they may well conclude it would not be. And indeed, when in fact the information was given out, it didn't turn out to help Shelby at all. Theoretically, I understand what you're saying. Factually, that never happened. They never did that analysis. They just said no. But where's the harm to that? I mean, you can presume harm. It's rebuttable. Here, what you do is you go to litigation and end up resolving the case with a clear indication of the whole policy scheme. Where are you harmed? Where is she harmed? Again, that's speculation. We don't know what would have happened had they given that information out at the time as opposed to post-litigation. Well, suggest to me a logical scenario that leads to a different result. We don't know is not a real satisfying answer. Because if you look at it, I have trouble seeing a scenario that leads to a different result. Well, that's why we have the presumed harm. So we don't engage in that speculation. And that's why it's one of the basis for that, the existence of that doctrine, is because otherwise we do have to speculate as to what would have been different. A lot of things could have happened in the interim. We could have done an analysis and it's an unreasoning refusal on State Farm to give out that information. And the reason why it is incredibly unreasonable, one, they never asked Mr. Webb whether it was okay with him to give it out. They never asked Ms. Fraunfelter if she had a problem with it. And we know at the same time, we're asking for potential coverages. Well, they know it's a potential coverage because at the same time, we're asking for it. Let's assume that that was unreasonable, right? Because State Farm, it's two distinct policies. But let's say that State Farm could have easily gone to her father and said, hey, do you mind? There's a big dispute here. The policy, in light of the harm caused by the accident, the mother's policy limit wasn't going to do it. Would dad waive any issues, privacy issues in order to disclose it? So you're challenging that on reasonableness grounds. And I suppose, I don't know why State Farm didn't go to dad to ask if he could, if he would consent to disclosure of his insurance policy limits. But at most, that gets you as far as the breach of some duty of good faith and fair dealing with the insured. But it doesn't get you all the way to bad faith. And I'm not sure that I understand the answer to my initial question because under Butler, I'm quoting from Butler here, a showing of bad faith handling of an insurance claim. So let's say they did breach some sort of duty, but given that she is not covered under dad's policy, how can you ultimately show any evidence to meet that element of the bad faith claim? And that's the element of harm. That takes us right back to Charbonneau. And it brings us back to Charbonneau. In that case, the issue of underwriting files. I actually, I think I'm the one that actually signed the subpoena in that case seeking the underwriting files. In that case, the factual dispute, that was occurring, that was messing up our settlement negotiations, the old term, sorry. That was the fact that Mr. Charbonneau believed that he had just placed his coverage on State Farm. He previously had been covered by a different carrier and he wanted the same coverage, but from State Farm. So he wanted $4 million for the coverage on a single policy for his four businesses. State Farm instead wrote four $1 million coverages for four businesses. So, that's their position. So that's where the dispute existed. That's why the underwriting files were needed to figure out what is the coverage here. Well, ultimately, at the end of the day, it was determined that the insurance company was right. He had only bought $1 million worth of coverages applicable solely to each business. So there was only $1 million of coverage available, even though at that time he was saying there was $4 million. So ultimately the determination of what the coverage is at the end of the rainbow is not dispositive. The issue is whether or not they failed to give information, they didn't consider the best interest of the insured, and it occurred during settlement negotiations and ultimately an excess judgment was entered into. Isn't the best interest of the insured as to Ms. Frank as to the driver for State Farm to have tendered the policy limits, got her a dismissal with prejudice, and let her grow on with her life? They might have got there. But isn't that going to be what their goal is going to be? And in light of the fact that they come to a conclusion there is no other coverage, that seems to be, in the fact that we seem to have the opinion that she's not covered as a primary resident, it seems it's Mr. Webb's issues under his policy that you would be trying to seek relief from, and you don't have any rights under those, do you? Well, she has rights under her own policy to have them to negotiate in good faith her claims that are being brought against her as a State Farm insured. And as a result you had to sue, and that's the harm. Ultimately we did have to sue to get that information, and arguably once you're down that path you're not going to turn back. But maybe we would have. You never settle after you sue? You never do that as a plaintiff's lawyer? Well, yes. Of course you do. Sure. Because that's when a lot of times other facts come forward, and it's not either settle pre-litigation or trial. There's a lot in between, and the whole vanishing trial era that we're in now is a testament to that. Cases settle on the doorstep all the time. I like trial, but yes. But you don't try a case because you like it, you try it because you have no alternative in the best interests of your client. Correct. And ultimately I've got like two seconds left. There is a new case that came out. I did want to bring the Court's attention on the primary issue. It's a case called Durant v. State Farm. It indicates that the statutory definitions in RCW 4.22.005, and the one in particular here is the insured definition at 5 subsection A, are matters of public policy that do have force and effect in the State of Washington. Under that statute, there's no word primary in it, and it defines who's a resident, who's an insured, and it includes family members. It would include Ms. Frommfelter. Is the site in your supplemental material? I found this last night. I will do a supplemental when I get to the office. Okay. All right. Thank you. Good morning. My name is Robert Mannheimer, and with co-counsel Ms. Young, we represent State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company. I will be addressing coverage issues. Ms. Young will address the issues of the extra The court has addressed the issue of primary residence. I will move to the issue of policy. I will admit my surprise as the last second, literally, disclosure of an opinion I'm not I'm in a position where I'm going to have to, if the court's going to review We don't know it either. Presumably, we'll get a 28-J letter, and you'll have an opportunity to respond in your version of a 28-J letter if the case makes any difference. We're all on the same page. Okay. Anyway. All right. But it affects somewhat my argument going to the public policy. I briefed it. Unless the court really has an issue with that, I'd rather give all my time to Ms. Young, unless there's a serious question on coverage or public policy as it currently stands, absent consideration of the grant decision, which I have no familiarity with. I am not that familiar with how claims are usually handled. Is it unusual under these circumstances that you wouldn't go to the dad, given that this is a, you know, kid whose mom has a policy, dad has a policy, and ask that now they're asking to have this policy disclosed? We don't think that she's an insured, but there are factual, where she primarily resides really is a factual issue. So if it assists in the settlement process to avoid litigation, would you care to disclose this underlying policy? Didn't seem like that ever occurred. That's an appropriate question for Ms. Young, because I'm dealing with the coverage issue, but I would indicate there is a record below where Mr. Webb responded, I think, to your question by saying I never anticipated that Shelby Fronfelder would be considered an insured. I had nothing to do with it. It wasn't my expectation that she would be an insured under my policy. She wasn't listed as a driver under any of his policies. So factually, that's all I can present to you. I'm really Usually you don't have two lawyers arguing for the same client, and this is one good illustration why, but it sounds like it should be Ms. Young's time to speak. Right. I apologize. I was brought in on the coverage issue, and so unless there's anything I'm going to yield my time. No, your client, that's probably not a good idea. Okay. Thank you, Your Honor. Good morning, Your Honors. Laura Young on behalf of State Farm. I can I'm just curious. It seems odd to me. Is this how it's usually done? That State Farm would then make a determination as to whether it's insured or not, even though it's a point in contention or dispute, and then not disclose the underlying file? I think with respect to submitting the question to Mr. Webb, because he's the one that has to determine whether or not the policy would be disclosed. Did he determine that? It's not in the record. He was apparently never asked, so we go back to the question that Judge Wendt has posed to you. How come he's not asked? Well, in Mr. McGeehee's declaration, which is at pages 88 to, excuse me, 84 to 88, he does actually indicate that State Farm forwarded the letter from counsel that was November 13, 2013, which is in the record at page 146 and 147, did actually forward that to State Farm. What's not in the record was his response. And he could have I know it's not in the record. That's why I don't have the answer. That's why I'm asking you, and I guess it will be a little outside of the record, but it just seems almost commonsensical that you would ask the insured if there's an objection to disclosure of the underlying file for settlement discussion purposes. Well, I think with respect to that question, there was no challenge from Mr. Webb as to whether there was coverage under the policy. So he didn't have any objection to State Farm's coverage determination. So whether he would have provided the policy or authorized the policy is not in the record. Well, you've got multiple policies and multiple insurers, and I understand that poses a problem. But with regard to the principal actor here, the daughter who was driving the car and who's clearly going to be on the hook if found liable, she's got a $50,000 policy, which isn't going to be nearly enough. So it's not hard to figure out that plaintiff, as a good attorney would do and did here, inquires to other sources of recovery, assets, other policies. Your client has a duty to its insured. To decline to give over information because of a purported duty to another insured starts to look pale if, in fact, that other insured isn't asked. I mean, the failure to give over Mr. Webb's policy information because of your purported duty to Mr. Webb doesn't really fly as a justification if Mr. Webb is ever asked if he's got a problem with that. Now, it may be that Mr. Webb never inquired about his coverage, but he's not the one asking the question in the first place, the plaintiff is. So I have the same bewilderment that Judge Wynn does as to what's the justification in acting on behalf of Ms. Fraunfelter, where you have a duty, not to respond to the inquiry from the injured party. Well, respectfully, I don't think there is a duty to Ms. Fraunfelter under the Siler policy to disclose another insured's policy. Well, you're representing her, or somebody's representing her, and she's the target of an obvious lawsuit, the dollar signs of which greatly exceed the amount of coverage she has available directly. And so anybody considering a resolution with her is going to want to know about other assets. So how can you say, you have a duty to defend her, how can you satisfy that duty if you decline to give out information which any injured party is going to seek to obtain and did seek to obtain here? Well, frankly, it is unusual to request copies of the policy. For example, the case of Smith that plaintiff relies heavily on, the case was not a question of whether to disclose an actual insurance policy. The question was, what are the limits? And it's undisputed here that plaintiff understood what the limits were of the policy. He also, Claimant's Counsel also understood that there was no coverage under that policy. Well, understood that was your conclusion, but he couldn't draw his own conclusion unless he got the policy. That's the reason for asking about the policy. And that's not hard to figure. Correct. But State Farm had already made the determination that there was no coverage for Shelby, so that was never going to be the... Well, stop for a second. Is the insurance company's word always the last one? With respect to what coverages are available when you're entertaining settlement discussions on behalf of one party, under one policy, and another, and under another policy? I think the correct answer to my question is no, because you find yourself in court. And everybody knows that. Everybody knows that plaintiff is going to make his own analysis, isn't going to necessarily accept the insurance company's word for it. That's the reason for giving over the policy. Well, one is that they have to protect Mr. Webb's interests. Only Mr. Webb has never asked about that, so that's a little pale. The other is that State Farm doesn't want to disclose just how liable it might be under Mr. Webb's policies. That's not serving Shelby's interests at all. That's the potential bad faith claim. Now, tell me why that isn't a bad faith claim. Well, I guess... How does that serve Shelby's interests? Disclosing the policy didn't serve Shelby's interests. Well, isn't that the problem? No, I'm sorry. Disclosing the policy wouldn't have served her interests. Why not? Because at the point where the policy is being requested, there was no opportunity for settlement. There's nothing in the record that indicates that there was a settlement that was about to happen. Well, there's a whole argument about harm. I understand that. But I'm looking at your duty to Shelby, and I don't understand how her interests are disserved by giving over the policy information that had been requested. It's disserved by providing policy information to give the impression that there's additional money that was never going to be proffered on behalf of Shelby. But let him make his own analysis. I think that's the point, right? You have a duty to your insured to put her in the best position for settlement, and if it can't be settled, then okay, fine. Litigate it through trial. So you have an insured who is covered under one policy where the policy limits is clearly inadequate to meet the harm to the victim of the accident in this case. You also have in your very possession another policy that she may not be the insured under. You made that determination in the dark of your own office. They asked to see it so that they could do their own evaluation, and you didn't turn it over. So I think what Judge Clifton and I are focusing on really the same point is the duty of good faith and fair dealing that you owe to the driver, because you had in your information information that the insured parties wanted to know so they can do an evaluation that maybe that you turned the information over, and they look at it and they say, wow, this is really tough. The policy says people who primarily or reside primarily with the insured are covered, so I think State Farm's right in its call that there's no potential coverage, and then maybe it wouldn't settle anyway in light of the policy limits. But I think that's really counsel's point is that they wanted to know the information so they can conduct their own evaluation, and State Farm refused to give it to them. I don't know why. I'm trying to figure that out. I still don't have the answer. If this had been a situation where you had gone to Mr. Webb and you said, we don't think there's coverage under this policy, and you didn't anticipate coverage either, but they're asking for this information, would you allow the disclosure of the policy information so that an evaluation can be conducted? And he says, no, I'm not going to give that consent. I don't think it's covered. I never intended for it to cover. Then I think State Farm would be in a difficult position, right, because you're trying to reconcile maybe conflicting obligations. But that wasn't the situation because State Farm never even reached out and asked Mr. Webb if he would consent to disclosure. Now, it may be that there's no harm, which is, I think, a different inquiry. Well, I think they did. I mean, they did send him the letter. But why wasn't there a breach of the duty of good faith and fair dealing by failing to ask Mr. Webb if he would consent to disclosure? I don't believe that the scope of the duty of good faith under one policy for which he is an insured, a good faith duty to settle, necessitates disclosure of another insured's policy. I don't think there's any Washington law that stands for that proposition. So let's just take a scenario where, in fact, disclosing the other policy would have led to a settlement. Now, I know we're not factually in that case, but it seems to me if, in fact, that it would be the situation that disclosing this other information would lead to a settlement and the person whose information you're asked to disclose does not object to it may, indeed, in this case, given the relationship between the parties, he may well have probably wanted to get the problem resolved for his daughter. Why isn't that part of the obligation to the insured who you're trying to defend, who you have an obligation to defend? Well, I think it would depend on the facts of the case. And I think under the facts of this case, there wasn't a bona fide settlement opportunity that hinged on the case settlement. You're explaining why there was no harm as a result. But at that point in time, I don't know how you would have known there wasn't a bona fide settlement opportunity. Because the language from counsel's letter at 146, 147 indicates that there wasn't a bona fide settlement opportunity. What he was requesting were copies of policies from the Seilers, from the Webb's parenting plan, declarations on the relationships between the parties. He was positing theories of liability as to the parents, including family car, agency. He was desperate looking for a source greater than the policy. Correct. And he's not going to go away unless he's convinced that there aren't other sources. But stay with me for this, because suppose — and I don't know how you'd draft such a term — but suppose it was ironclad clear that Mr. Webb's policy could not possibly have provided coverage to the driver. By not disclosing that, the plaintiff is plainly not going to settle because he's desperate to find more assets. If it turns out this is a dry hole, he's not stupid. He's not going to waste time on a completely dry hole. That might crack the door open towards settlement. And I can't see how State Farm would have known to the contrary at that time. They may have decided this whole thing is futile and in the end fall back on harmless — no harm as a result of this. But I don't know how they could have been sure that not giving over this information was in Shelby's best interests. I think the letter speaks for itself with respect to what the posture of the case was at the time that this was being requested. And I think what it evidences is, in fact, no intent to settle. Because when a letter comes out saying we're going to sue the parents too, we think we have a negligent entrustment claim, we think we have agency theory, we think we have a family car doctrine issue, you can't get to the parents unless you get to Shelby. And Shelby was contesting liability. State Farm had made the determination to tender the Seiler policy limits given the nature of the case, but the liability was being contested. You can't get to the parents without getting to Shelby. So when you're getting a letter that comes in that says we want all this information, including parenting plan information and everything else, before we even consider talking about settlement, that's not a reception for a bona fide settlement for the 5100 policy limits. When in the life of this case did the Webb policy ultimately get disclosed? I believe about eight weeks after litigation was filed. And then the case went both against the Seilers, the parents, the mother, the stepfather, the father, and Shelby. The case was dismissed as to the parents on some of the summary judgment issues, went to trial on some of the parent issues, and then ultimately went to trial against Shelby. So looking at the procedural history of the case, it reinforces that there was no opportunity for settlement. And no harm, because you're talking about eight weeks, it would be your view. Thank you. Thank you very much. All right. Thank you both parties over time. So the matter is submitted for decision. And that concludes all the cases set for argument this week. We're adjourned for the week.
judges: Clifton, Nguyen, Battaglia